UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AQUEELAH BARNES, ) | |
| ) | |
| Plaintiff, ) | No. 1:21-CV-06399 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| EQUIFAX INFORMATION ) | |
| SERVICES, LLC, and ) | |
| FRIST PREMIER BANK, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Aqueelah Barnes accuses Equifax Information Services and First Premier Bank of violating the Fair Credit Reporting Act, 15 U.S.C. § 1681,[1] which protects consumer information handled by credit reporting agencies. R. 1, Compl. ¶¶ 18–43.[2] Barnes alleges that First Premier negligently and willfully provided inaccurate information to Equifax, a credit reporting agency, about monthly payments due on a bank account, *id.* ¶¶ 18–29, and that Equifax then negligently and willfully failed to assure the accuracy of the information that it reported, *id.* ¶¶ 30–43. Equifax's motion to dismiss—joined by First Premier—argues that Barnes has failed to adequately plead that the credit report was inaccurate, that she suffered damages, and that the

---

[1]The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331.
[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

Defendants acted willfully. R. 14, Mot. Dismiss at 1; R. 29, First Premier Joinder. For the reasons explained below, the motion is denied.

## I. Background

For purposes of evaluating the motion to dismiss, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in Barnes's favor. *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). On August 12, 2021, Barnes received an Equifax credit report and found an error: a monthly payment of $72 due on a First Premier account that was closed and had no owed amount. Compl. ¶¶ 9, 10.[3] Barnes asserts that the report should have reflected $0 due. *Id.* ¶¶ 7–10. So she complained to Equifax, *id.* ¶ 11, and explained that she no longer had payments due to First Premier, *id.* ¶¶ 9, 12. Upon receiving Barnes's letter, Equifax began an investigation and forwarded the dispute to the bank. *Id.* ¶¶ 13–14. Barnes alleges that she never heard back about the results of that review. *Id.* ¶ 15. In any event, Equifax's investigation concluded that, as of October 3, 2021, Barnes still had a First Premier balance outstanding of $979 and a "scheduled payment amount" of $69 (not $72) per month on an account closed in June 2021. R. 14-1, Equifax Investigation Report at 4.

---

[3]Curiously, Barnes does not attach that credit report (or any credit report) containing the alleged error. So the Court does not have access to it and must rely on her allegations, which are accepted as true at this stage.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

A Rule 12(b)(6) motion "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The allegations "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and are entitled to an assumption of truth so long as they are factual in nature, rather than mere legal conclusions, *Iqbal*, 556 U.S. at 678–79.

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

### A. Accuracy

The Defendants argue that Barnes's complaint should be dismissed because she supposedly failed to allege that any of the information reported by them was inaccurate. Mot. Dismiss at 5. That is because, from the defense's perspective, Barnes does not dispute that she owed monthly payments to First Premier in the past, before the account was closed. *Id.* Barnes responds that her complaint must survive because her allegations are that the Defendants reported that she still owed money in the present, when in fact she did not. R. 25, Pl.'s Resp. at 3–11. To help explain why Barnes has the better of this argument, it is helpful to delve (briefly) into a background of the Fair Credit Reporting Act (which is commonly referred to as the FCRA).

Overall, Congress enacted the FCRA to ensure "fair and accurate credit reporting." 15 U.S.C. § 1681. To this end, the Act imposes certain requirements on consumer reporting agencies and entities, like banks, that furnish information to those agencies. *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). If a consumer disputes "the completeness or accuracy of any item of information," then the reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). The agency must also notify the furnisher of the information about the dispute. 15 U.S.C. § 1681i(a)(2). Upon receipt of this notice, a furnisher must conduct its own investigation to ensure "completeness and accuracy." 15 U.S.C. § 1681s–2(b)(1).

Because accuracy has been held to be a defense to alleged violations of § 1681, "[w]hat constitutes accuracy thus becomes an important question, and there is currently a circuit split on the issue." *Shannon v. Equifax Info. Services*, 764 F.Supp.2d 714, 721 (E.D. Pa. 2011); *see also Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020) ("Section 1681e(b) does not explain what it means to be inaccurate ...."). The Sixth Circuit has held that the submission of a technically accurate report is sufficient to present a defense against alleged § 1681 violations. *See Dickens v. Trans Union Corp.*, 18 Fed. Appx. 315, 318 (6th Cir. 2001). Other Circuits have rejected this approach, and instead have adopted a formulation equating inaccuracy to "misleading," thus interpreting the Act to prohibit the presentation of credit information in a manner that would lead to a "materially misleading impression." *Saunders v. Branch Banking & Trust Co. of VA*, 526 F.3d 142, 148–150 (4th Cir. 2008); *see also Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564 (5th Cir. 2020) (explaining that an omission in a credit report becomes inaccurate when the report is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions"); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (holding that a credit report that is misleading to such an extent that it can be expected to adversely affect credit decisions violates the FCRA).

The Seventh Circuit has not picked a side. But one clue to understanding what "accuracy" means is the Act's requirement that entities that furnish consumer-data information—such as First Premier here—must investigate disputes not only over the "accuracy," but also the "completeness" of any information. § 1681s-2(b)(1). If the

5

investigation reveals inaccurate or "incomplete" information, then the furnisher must report the investigation's results to the credit reporting agencies. This makes sense from the standpoint of the Act's purpose, because an inaccurate assessment of creditworthiness may arise from an *incomplete* report—not just an explicitly inaccurate one. Congress passed the Act so that individuals could have their creditworthiness fairly and accurately assessed, and just as importantly, so that third-parties like creditors or employers would be able to fully assess a consumer's credit worthiness. *See* 15 U.S.C. § 1681 ("An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers"); *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 981 (7th Cir. 2004) ("Congress found that agencies were too often reporting inaccurate information that was adversely affecting the ability of individuals to obtain employment"). So this Court concludes that the accuracy obligation has not been met if the furnisher provides information that is "misleading" in a way that "can be expected to have an adverse effect" on the consumer. *Dalton v. Capital Associated Indus.,* 257 F.3d 409, 415 (4th Cir. 2001).

In any event, it turns out that Barnes sufficiently alleges that the Defendants violated the Act under either interpretation of "inaccuracy." That is because the allegations accuse the Defendants of inaccurately reporting information in the here and now (at least as of the time of the lawsuit's filing). Specifically, Barnes alleges that "First Premier *is* inaccurately reporting its respective tradeline with an erroneous scheduled monthly payment" and that Equifax included incorrect "*scheduled* monthly

payment amount" in the credit reports of August 12 and October 29, 2021. Compl. ¶¶ 7, 10, 15 (emphases added). Put another way, the allegations are that the inaccurate reporting is ongoing—at least as of the filing of the complaint. That contradicts the Defendants' argument that Barnes is only complaining about the inclusion of some past, historical payment (which arguably might not be misleading). Indeed, Equifax's own investigation report lists a balance outstanding of $979 and a "*scheduled* payment amount" of $69 (not $72) per month, suggesting that even after its investigation Equifax continued to believe—and was reporting—that Barnes still owed money to First Premier. Equifax Investigation Report at 4 (emphasis added). It thus is clear that, under any definition of the term "accuracy," and drawing all reasonable inferences in her favor, Barnes has sufficiently plead inaccuracy.

### B. Damages

The Defendants' next argument is that Barnes did not sufficiently plead damages. Mot. Dismiss at 10–11. According to the defense, the damages allegations are too vague because she did not include details about specifically when and how the Defendants' actions caused her to suffer harm, such as difficulty in accessing credit. *Id.* But this is the pleading stage. The Defendants are invoking a standard inapplicable to an FCRA case like this one. The defenses demands particularity on the when and the how of damages, a demand that evokes the Civil Rule 9(b) heightened pleading standard for fraud cases, under which plaintiffs must allege the "who, what, when, where, and how of the fraud." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). But this is not a fraud case. The question here is

whether the complaint has put the Defendants on fair notice of the claims and damages against them, sufficient for them to mount their defense. The answer is that it has. Barnes alleges that the Defendants caused her stress and anxiety, and that the inaccurate credit report has impaired her ability to obtain employment, as well as impaired her ability to obtain "new or more favorable credit terms," Compl. ¶¶ 16–17. Under the notice pleading standard of Civil Rule 8(a)(2), Barnes need not lay out with particularity anything more on when or how exactly she suffered stress and anxiety, or was rejected for employment, or was rejected in trying to obtain a more favorable credit facility.

To be sure, the Defendants are right that Barnes will have to show—in the next phase of this litigation—a "causal relation between the statutory violation and the harm[s]" she suffered. *Persinger v. Sw. Credit Sys.*, L.P., 20 F.4th 1184, 1194 (7th Cir. 2021 (summary judgment opinion); *see also Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 605 (7th Cir. 2005) (summary judgment opinion). But at this point, the Court accepts Barnes's allegations as true and draws reasonable inferences in her favor. And the Defendants do not cite any authority—nor is the Court aware of any—that would impose a heightened pleading standard for a case like this. Perhaps discovery will reveal that Barnes never suffered stress and anxiety, or that she never actually encountered difficulties in finding employment or obtaining credit due

to the credit report. But this is the pleading stage. In sum, Barnes's damages are sufficiently pleaded.[5]

## C. Willfulness

That leads to the last point raised by the Defendants, which again challenges the sufficiency of Barnes's allegations, but in a different context—willfulness. The Defendants argue that Barnes did not adequately allege any conduct that demonstrated actual knowledge or reckless disregard of the inaccuracy. Mot. Dismiss at 12–13. A credit reporting agency or bank that willfully violates the FCRA may be liable for punitive damages. 15 U.S.C. § 1681n. But—just as with damages allegations—the Seventh Circuit has explained that allegations of willfulness at the *pleading* stage cannot be subjected to the scrutiny applied at the summary judgment stage. *See Killingsworth v. HSBC Bank Nevada,* 507 F.3d 614, 623 (7th Cir. 2007) ("[Plaintiff] might (or might not) be able to defeat a summary judgment motion on the element of willfulness (assuming this claim goes forward), but his complaint contains sufficient detail to survive a motion to dismiss."). The Defendants again expect particularized fact pleading when the applicable standard only requires sufficient notice. Indeed, the Defendants only cite to summary-judgment cases. Mot. Dismiss at 13. So, Barnes's

---

[5]For the same reasons, Barnes also sufficiently alleges that Equifax failed to conduct a reasonable reinvestigation and that it provided inaccurate credit reports to third parties. *See* Mot. Dismiss at 9–10 (arguing that Barnes does not sufficiently set forth who Equifax sent her reports to, and when and how it did so); *id.* at 11–12 (arguing that Barnes's reinvestigation allegations are conclusory). Equifax is on notice of the claims against it and can mount its defense and engage in discovery. Again, this will likely all come to a head at the summary judgment stage.

allegation that her credit report was not corrected after notifying the Defendants of the error, is sufficient to support her claims of willful violations of the FCRA. Compl. ¶ 15. Once more, Defendants will have the opportunity to produce evidence to show that that they did not act willfully.

## IV. Conclusion

The Court denies the Defendants' motion to dismiss in its entirety. The Defendants shall file their answers by October 16, 2023. The parties shall file a joint status report with a proposed discovery schedule by October 20, 2023.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 29, 2023